## Rogers Grain Company v. T. O. Tanton, trustee.

### Gen. No. 4,842.

1. JUROR—*what not ground for challenge for cause.* The fact that a juror is a stockholder in a corporation, a rival to one of the parties, does not constitute.ground for a challenge for cause where the juror states that he did not know the party to the cause and could fairly and impartially act as a juror.

2. JUROR—*when erroneous ruling upon challenge not prejudicial.* The overruling of a challenge for cause is not prejudicial where the complaining party did not exhaust his peremptory challenges.

3. PRINCIPAL AND AGENT—*who bound to know extent of latter's authority.* Persons who deal with an agent, knowing him to be such, are bound, at their peril, to know the extent of his authority, and letters which form the basis and limit the extent of the agent's authority are competent against those who are bound to ascertain and know the extent of the authority of such agent.

4. EVIDENCE—*what does not render telephone conversation incompetent.* The mere fact that the party testifying to a telephone conversation could not identify the voice of the person to whom he was speaking, does not render the conversation incompetent. It is a question of fact for the jury to determine whether under all the evidence the identity of the speaker has been established.

Assumpsit. Appeal from the Circuit Court of Livingston County; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the April term, 1907. Affirmed. Opinion filed August 6, 1907. Rehearing denied and opinion modified October 10, 1907.

A. C. NORTON, for appellant.

ELLWOOD & MEEK and R. R. WALLACE, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

T. O. Tanton, trustee of an estate, lives at Peoria and had charge of some real estate in Livingston county. John Heeren was a tenant of Tanton. L. B. Slyder was the agent of Rogers Grain Company at Graymont. On January 27, 1905, Tanton wrote to Heeren to sell the rent corn and deliver before March first, if he could get forty cents. Heeren sold the corn to the Rogers Grain Company for forty cents. The corn was not delivered in March. In May Tanton again wrote to sell the corn. The corn was delivered June 5th, to the Rogers Grain Company. June 5th a check was sent to Tanton for the corn figured at forty cents, but it was not accepted in full payment. Suit was brought to recover an additional eight cents per bushel. The jury found for the plaintiff $151.68 on which finding judgment was rendered, and the grain company appeals.

It is first assigned for error that a challenge for cause to a juror was improperly overruled. A juror stated upon his examination that he was a stockholder in a farmer's ele-

vator company doing business at Campus in Livingston county, a station at which the appellant did not have an elevator, although the appellant bought grain at several places within a few miles of Campus. The juror also stated he did not know appellant, and that he could fairly and impartially try the case. Appellant interposed a challenge for cause on the ground that the juror was a competitor and interested in a rival company. If such a cause should be sustained as a ground for challenge then no farmer could be a juror when a farmer was interested in a suit; neither could a merchant be a juror in any suit that any other merchant in the same county was interested in, even though unknown to the juror. The assignment of error cannot be maintained for the further reason that it appears from the record, that appellant challenged the juror peremptorily, and as far as is shown by the record this was the only peremptory challenge used. The record fails to show that appellant was prejudiced in any way by the court disallowing the challenge for cause, in as much as he was challenged peremptorily, and appellant was not forced to keep any juror that was incompetent. Graff v. People, 208 Ill., 312; Spies v. People, 122 Ill., 1.

The facts in controversy in this case are as to what authority Heeren had in the matter of making the sale, and what occurred on February 23rd that caused the grain not to be delivered at that time when Heeren was prepared and ready to deliver the corn, and was the contract of sale made in February broken or waived by appellant and a new contract of sale made in May?

In the letter written by Tanton to Heeren January 27th he instructed Heeren, "If the corn gets so you can sell for forty cents and deliver before the first of March you may sell our rent. Whenever you sell have them take it just as soon as possible." Heeren testifies that he showed the original to Slyder, the agent of appellant. If Heeren did not show the letter to appellant at the time of the sale in February, still appellant buying the grain of an agent who had only authority to sell by virtue of the letter, it was bound

at its peril to know the extent of the agent's authority. Baxter v. Lamont, 60 Ill., 237. On February 15th Heeren, under the authority of the letter of January 27th, sold the corn to the appellant at Graymont for forty cents, through its agent Slyder. Graymont is three and one half miles from the Heeren farm, where the corn was cribbed. On February 23rd Heeren had a corn sheller and teams engaged to shell and deliver the corn on that day. On that morning a message came to Heeren through Mrs. Henry Obert, who lived forty rods from Heeren, that appellant could not receive the corn. Heeren testified that he went immediately on horseback to Graymont and asked Slyder what was the reason he could not take the corn and that Slyder replied, "It's too bad, Johnnie, we can't take your corn, we ain't got no cars." Slyder denies making this reply, but says Heeren did come to see him and told him he was going to shell that afternoon, and that he replied, "It looks as if it is going to rain. I wouldn't think your haulers would want to haul in the rain." He also says that he knew it was rent corn, and that they had plenty of room in the elevator. Heeren says that as a result of this conversation he stopped the sheller and teams that he had engaged from coming. In May, Tanton again wrote to Heeren to sell the corn, and Heeren testifies he was offered forty-seven and one half cents by the Farmers' Elevator, and that he went to appellant's office and told Slyder what he was offered, and Slyder said "Well, bring it in for forty-eight cents and don't say nothing," and that he delivered the corn under this contract. Slyder denies this conversation, and says he repeatedly demanded the delivery of the corn between February 23rd and June, but Heeren denies that any demand was ever made.

Appellant knew that the corn sold was the property of Tanton. It was bound to know the extent of Heeren's authority, and that authority was limited to a sale and delivery before March first. That being the fact, if appellant prevented the delivery before that time, it had no claim on the corn after March first. It was a question of fact for the jury to decide whether they would believe Heeren's or

Rogers Grain Co. v. Tanton.

Slyder's version of the occurrences of February 23rd, and whether a sale was made subsequently at forty-eight cents. The jury believed appellee's evidence, and we cannot say that they were mistaken.

Appellant insists it was error to admit in evidence the letters written by Tanton to Heeren. They were admitted for the purpose of showing the extent of the authority of Heeren and were competent for that purpose. Without them Heeren had no right to sell the corn. Appellant, knowing it was dealing with an agent, was bound to know the extent of the agency. The authority being in writing, appellant must take notice of its terms. Peabody v. Hoard, 46 Ill., 242; Blackmer v. Summit Coal M. Co., 187 Ill., 32.

Henry Obert, a neighbor of Heeren, living forty rods from him, testified that as he was driving past Slyder's elevator, Slyder came out to his wagon and wanted to know if he was going right home, and he told Slyder no; that Slyder said he wanted to know the quickest way to get word to Heeren that he could not shell corn, that he could not take his corn; and he told Slyder that he, Obert, had a telephone, and that to telephone to Mrs. Obert would be the quickest way to get word to Heeren, and he, Slyder, said he would do so. This conversation between Slyder and Obert was corroborated by another witness. Mrs. Obert was permitted to testify to a conversation had over the telephone on the same day that the conversation occurred between Obert and Slyder, with a person who said his name was Slyder. She did not recognize his voice, never having talked with him before. She testified that he said he was Mr. Slyder and he "asked me if I would go to Mr. Heeren and tell him he could not shell; he could not take his corn that afternoon; he had no room for it," and that she conveyed this message to Heeren. Heeren testified that immediately after the message conveyed by Mrs. Obert he went to Graymont to Slyder's office and told Slyder what Mrs. Obert said to him, and asked him what was the reason he could not take the corn, and that Slyder replied, "It's too bad, Johnnie, we can't take your corn; we ain't got no cars." Appellant assigns for error

the admission of the conversation with the person who said he was Slyder, over the telephone. The evidence of Obert and Boyer in connection with that of Heeren tended to show that Slyder was the party who talked with Mrs. Obert over the telephone. There being evidence Slyder desired to communicate with Heeren by telephone through Mrs. Obert it was a question of fact for the jury from all the evidence before them whether he was the party or not. Courts must recognize the convenience and use of telephones in business. "When a person places himself in connection with a telephone system through an instrument in his office he thereby invites communication in relation to his business through that channel." The converse of this must be true that if a person uses a telephone in his place of business, and expresses a desire to communicate with a third party through his telephone, and a conversation takes place over the telephone under such circumstances, the fact that the voice was not identified does not render the conversation inadmissible, but it is a question of fact for the jury to say whether or not the proof identifies the speaker.

There was no error in the admission of Mrs. Obert's testimony. Godair v. Ham Nat. Bank, 225 Ill., 572; Wollf v. Missouri P. R. R., 3 L. R. A., 539.

Appellee was permitted to prove against the objection of appellant that he was taxed for the grain over which this controversy arose in 1905; this was immaterial, but it was harmless error.

In the argument of the case counsel for appellee went outside of the record, and stated appellant was a speculator on the board of trade. This was objected to by appellant. The court sustained the objection and rebuked counsel for appellee, and there is therefore no reversible error.

Appellant criticizes two instructions given at the request of appellee. It is claimed that the second instruction should have made a distinction between a general and a special agent. A person dealing with an agent must know the extent of the agent's authority. It was not necessary to confuse the jury by fine distinctions that would be liable to mislead.

If appellant desired such an instruction given it should have requested it.   It is said the seventh instruction assumes that Slyder had authority to waive delivery.   A careful examination of the instruction shows that no facts are assumed therein.   The fourth and fifth instructions asked for the appellant were properly refused for the reason that they assume that Heeren had general authority to sell the corn without any restriction as to time of delivery, while the only authority of which there was any evidence limited the sale to a delivery before March first, and the fourth instruction assumed many other facts as proved concerning which there was dispute.

The jury was fairly instructed and no reason appears for interfering with the judgment.   It is therefore affirmed.

*Affirmed.*